# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| NANCY McKAY, as Conservator of ARTHUR BRUCE McKAY, ] ] ] | |
| Plaintiff, ] ] | |
| v. ] ] | CV-03-BE-0590-W |
| TRACOR, INC. d/b/a TRACOR SYSTEMS TECHNOLOGIES, INC., a foreign corporation doing business in the State of Alabama, *et al.*, ] ] ] ] ] | |
| Defendants. ] | |

## MEMORANDUM OPINION

Before the court is Defendants' "Motion for Determination of Governing Law" (doc. 131).

Because the injury at issue occurred on a United States military base located in Japan, under

Alabama's *lex loci delicti* choice of law doctrine, Defendants seek to apply Japanese law to the case.

For the reasons stated at the hearing held October 23, 2007, and summarized below, the court

concludes that Defendants have waived the application of Japanese law by failing to provide

"reasonable written notice" as required by Fed. R. Civ. P. 44.1.  Accordingly, the court will deny

Defendants' motion; this case will proceed under Alabama law.

### I.  BRIEF BACKGROUND[1]

On March 5, 2002, Plaintiff's son, U.S. Marine Arthur Bruce McKay, was stationed at Camp

Fuji in Japan.  Camp Fuji is a U.S. military base subject to the Status of Forces Agreement ("SOFA")

---

[1] Because the majority of facts are irrelevant to the current motion, the court includes only
a brief background and those specific facts important to resolution of the choice of law issue.

between the United States and Japan.  Camp Fuji is an "exclusive use, 309 acre US facility designed to support US forces."  (PEX 6).  An adjacent area – the Fuji Maneuver Area – is jointly used by U.S. forces and the Japanese Ground Self Defense Force.

McKay's duties at Camp Fuji on March 5, 2002 included arming the Intruder Detection System ("IDS") at a specific ammunitions bunker.  Defendant Tracor d/b/a BAE Systems manufactured and installed the IDS.  The on-site field maintenance technician at Camp Fuji was Defendant Keith St. John.  Because of timing differentials, McKay was required to activate the ammunitions bunker door from outside the bunker.  During the three minutes during which the door closed, McKay was required to enter the bunker, activate the IDS, and exit the bunker.

In the course of performing his duties on March 5, 2002, McKay became pinned in the bunker door as it closed.  Other Marine personnel attempted to reopen the door, but the electronic back-up system failed.  The manual back-up system also failed.  Several Marines used a forklift to force the door open.  McKay was pinned for nearly twenty minutes.  As a result of these events, McKay suffered brain damage, bodily injury and total incapacitation.  He received medical treatment in Alabama and died in Alabama some time later as a result of his injuries.

Plaintiff Nancy McKay filed a complaint on March 14, 2003 on behalf of her son, Arthur Bruce McKay.  Plaintiff has amended her complaint five times -- on April 10, 2003; October 24, 2003; December 12, 2003; May 27, 2004; and November 3, 2006 after the death of her son. Plaintiff's specific causes of action in the fifth – and final – amended complaint included negligence and failure to warn in Count I; products liability in Count II; breach of warranty in Count III; combined and concurrent negligence and/or wantonness in Count IV; negligent hiring, supervision, and training in Count V; a claim under the Federal Medical Care Recovery Act in Count VI; and wrongful death in Count VII.

Defendants answered the first, third, fourth, and fifth amended complaints on various dates between April 30, 2003 and November 17, 2006. In each answer, Defendants have generally denied each assertion and pleaded the same affirmative defenses under Alabama law, including failure to state a claim; statute of limitations; laches, waiver and estoppel; lack of subject matter jurisdiction; contributory negligence; third-party liability; assumption of the risk; intervening causation; government contractor defense; product misuse/modification; sophisticated user or learned intermediary; failure to name indispensable parties; improper venue; violation of federal and state constitutional rights (for punitive damages); and bar by Ala. Code §§ 6-11-20, 6-11-21. In the most recent amended complaint filed November 17, 2006, Defendants also added that "Alabama's Wrongful Death Statute is unconstitutional both on its face and as applied . . . ." (doc. 116, p. 12).

After the first amended complaint and Defendants' answer to that complaint, the court issued a scheduling order in which it set deadlines for discovery and motions regarding the government contractor defense. Plaintiff and Defendants each moved for summary judgment on the government contractor defense. After initially granting in part and denying in part both motions, the court held a hearing on July 7, 2006 to address Defendants' motion for reconsideration. The court vacated its first order, allowed additional briefing after the hearing, and, on August 18, 2006, denied both motions in their entirety. The court denied further consideration.

At the July 7, 2006 hearing, the court sought "help . . . in making sure that [it] fully understand[s] some of the nuances of the plaintiff's claims that remain in this case . . . ." Specifically, the court recognized that the first question – even before applying the government contractor defense – is what state law applies. Noting that no one had yet raised the issue, the court nonetheless asked for counsel's positions. Plaintiff's counsel responded that Alabama law would apply and that Defendants had waived application of any other law. Defense counsel said the

-3-

question was "tricky" and that they would "submit a quick brief" <u>if</u> law other than Alabama law applied. The court told the parties that "until I am advised of some authority that would require me to apply a law other than that of Alabama, that's what I am going to apply . . . ." "[I]f there is some strong valid reason for the court to apply something other than the law of Alabama," the Defendants agreed to inform the court "right away." Defendants submitted nothing.

Almost a year later, on the final dispositive motion deadline of June 18, 2007, Defendants moved for a determination of governing law. In essence, they argue that Alabama follows the choice of law rule of *lex loci delicti*, the law of the place of the injury. Consequently, because the injury occurred in Japan, Defendants argue that Japanese law applies. Plaintiff, on the other hand, argues that Defendants waived application of Japanese law by their failure to raise the issue in writing during four years of litigation and almost one year after the court's inquiry.

## II.  WAIVER UNDER RULE 44.1

Fed. R. Civ. P. 44.1 states: "A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice." The rule does not set a definite time within which notice is reasonable. Rather, the drafters of Fed. R. Civ. P. 44.1 indicated that courts generally consider at least three factors, among others, in determining reasonableness: (1) the stage at which the case has reached at the time of notice; (2) the reason proffered for failure to give earlier notice; and (3) the importance to the case as a whole of the issue of foreign law sought to be raised. Fed. R. Civ. P. 44.1 Advisory Committee's note. This determination is within the court's <u>discretionary powers</u> to supervise litigation. *Rationis Enter. Inc. of Panama v. Hyundai Mipo Dockyard Co., Ltd.*, 426 F.3d 580, 585 (2d Cir. 2005). The court will now address each of these factors and others.

This case is at a very late stage.  As discussed above, the court essentially bifurcated this case into two phases: (1) to determine whether the government contractor defense was an absolute defense to all claims; and (2) if not, to proceed to Plaintiff's substantive causes of action.  Both Plaintiff and Defendants moved for summary judgment in phase I, and in September 2005, the court granted in part and denied in part both motions.  Defendants moved for reconsideration, and the court held a hearing on July 7, 2006.  The court, at the hearing, inquired *sua sponte* about the governing law when applying the second prong of the test for the government contractor defense: whether the federal interest at issue conflicts with the applicable state law.  The court vacated its earlier order, this time denying both motions for summary judgment entirely because disputed issues of fact existed as to whether the government or Defendants exercised discretion over Defendants' actions.  In October 2006, the court issued a revised scheduling order governing the remainder of the case.  The discovery cutoff was April 30, 2007, and all potentially dispositive motions were due by May 31, 2007.  The court later extended these deadlines to May 15, 2007 and June 18, 2007, respectively.  The court indicated that the parties should be prepared for trial in November 2007.  On June 18, 2007 – the dispositive motion deadline – Defendants filed the current motion for determination of governing law.

Each party cites a plethora of federal and Alabama state court decisions[2] supporting its position.  Defendants cite cases in which courts have allowed notice at later stages of litigation.  *See, e.g.*, *Club Car, Inc. v. Club Car (Quebec) Imp. Inc.*, 362 F.3d 775, 781 (11th Cir. 2004) (affirming district court's application of Quebec law between Quebec parties where notice was not given until two weeks before trial without citation to authority or discussing its reasons); *Mut. Serv. Ins. Co. v.*

---

[2] Like the corresponding federal rule at issue, Ala. R. Civ. P. 44.1 requires "reasonable written notice" of a party's intent to raise an issue of foreign law.  The Alabama rule also applies to issues of another state's law or a U.S. territory's law.

*Frit Indus. Inc.*, 358 F.3d 1312, 1321 (11th Cir. 2004) (stating, even though parties did not substantively argue foreign law, that notice at the pretrial conference was sufficient); *Levin v. Dalva Bros., Inc.*, 459 F.2d 68, 72 (1st Cir. 2006) (holding that a district court did not abuse its discretion by permitting the party to raise a foreign law issue on the first day of trial); *Cherokee Ins. Co. v. Sanchez*, 2007 WL 1576106 (Ala. June 1, 2007) (affirming trial court's decision to apply Tennessee law where defendant expressly raised the issue for the first time thirty-two days before trial and about one year after complaint, but noting that prelitigation correspondence, defendant's answer, and defendant's motion for summary judgment all relied upon a defense available under Tennessee law – but <u>unavailable</u> under Alabama law).

Plaintiffs, on the other hand, cite cases in which courts have concluded that notice was unreasonable at earlier stages. *See, e.g.*, *Simmons Machinery Co. v. M&M Brokerage, Inc.*, 409 So. 2d 743, 758-59 (Ala. 1982) (affirming trial court's denial of defendant's motion to apply foreign law filed three years after the complaint, five months after the trial court granted partial summary judgment for the plaintiff, and one week before trial); *Whirlpool Fin. Corp. v. Sevaux*, 96 F.3d 216, 221 (7th Cir. 1996) (holding that a defendant waived application of foreign law where he did not raise it in his answer or amended answer, but waited until his motion to reconsider the district court's entry of summary judgment against him).

The drafters of Fed. R. Civ. P. 44.1 did not envision a generally applicable time limit to apply to all cases, and this court cannot logically reconcile the parties' cited cases to set such a bright-line cutoff. As the First Circuit Court of Appeals recognized, "each [of those cases] was decided based on the case's own facts and equities. These dueling citations serve only to illustrate the essential point: case supervision is the primary responsibility of the trial court." *Levin*, 459 F.3d at 72; *see also Cherokee*, 2007 WL at *8 ("Because a determination of the 'reasonableness' of a[n] [Alabama]

Rule 44.1 notice necessarily is case specific, there is no bright-line standard concerning the timeliness of such a notice."). Of these cases, however, the court finds that the *Whirlpool* case is most closely analogous to this case, and accepts the Seventh Circuit's holding that a defendant may waive application of foreign law "by failing to address the choice-of-law issue earlier in the proceedings." *Whirlpool*, 96 F.3d at 221.

Here, Defendants failed to raise any issue of Japanese law until more than four years after the complaint was filed. Over that time, Plaintiff amended the complaint <u>five times</u>, and Defendants answered all but one of the amended complaints, each time raising specific defenses under <u>Alabama law</u>. In addition, the parties engaged in two rounds of discovery, dueling motions for summary judgment, and multiple hearings and conferences before the court. When the court raised the issue more than a year ago, Defendants failed to come forward as promised and, therefore, acquiesced in the application of Alabama law. Not until the final deadline for dispositive motions did Defendants raise this issue.

Attempting to justify such late notice, Defendants argue that the "issue of conflict of law did not even become ripe until the recent filings of dispositive motions, as the first 3 ½ years of this 4 year old case was focused solely on the federal common law government contractor defense." Defendants argue that, under this court's bifurcation of the case, "the parties were specifically not allowed to engage in discovery or motions practice related to the substantive tort issues until October 2006." Defendants are correct that the government contractor defense is <u>available</u> regardless of the governing law, but this does not mean that its application will not differ depending upon the applicable underlying law. The second prong under the government contractor defense specifically asks whether a federal interest conflicts with the <u>applicable</u> state law. In fact, it was in this context that the court first inquired about the issue. The potential conflict between the federal interest and

Alabama law may be very different than the potential conflict between the federal interest and Japanese law. Defendants' claim now that they did not contest the application of Alabama law at that time because the applicable law was irrelevant to the government contractor defense is disingenuous and does not excuse their tardiness in notifying the court and Plaintiff of their intent to raise an issue of foreign law.

In addition, at the July 2006 hearing, Defendants committed to research the issue and quickly notify the court if any law other than Alabama law would apply. Defendants did not do so, and have provided no good reason for that failure. Rather, Defendants invoke the common law preschool defense of "but he did it too!" That is, Defendants argue that Plaintiff also committed to research the choice of law question at the July 2006 hearing and failed to notify the court of the applicability of Japanese law.

Choice of law, however, does not become an issue unless an actual conflict exists between the interested jurisdictions' laws. *See Lemuel v. Admiral Ins. Co.*, 414 F. Supp. 2d 1037, 1049-50 (M.D. Ala. 2006). Where a party does not raise a choice of law issue, the court may assume that the parties have acquiesced in the application of the law of the forum. *Cavic v. Grand Bahama Dev. Co.*, 701 F.2d 879, 882 (11th Cir. 1983). At the July 2006 hearing, the court informed the parties that it would proceed under Alabama law unless informed otherwise. Perhaps Plaintiff did research the issue as Defendants alleged she was obligated, but unless Plaintiff intended to raise an issue of foreign law, she had no obligations under Rule 44.1. The burden fell upon Defendants – as the parties now seeking application of Japanese law – to notify the court and Plaintiff of their intent to raise an issue of foreign law within a reasonable time. *See Bechtel & Cole v. Graceland Broadcasting*, 18 F.3d 953, at *3 (D.C. Cir. 1994), *quoting Rymer v. Pool*, 574 A.2d 283, 285

(D.C.1990) ("Generally, when parties do not raise the issue of the applicability of foreign law, a court is under no obligation to apply foreign law and may instead apply the law of the forum.").

In any case, waiting until resolution of the government contractor defense or until a year after the court raised the issue was not proper.  Rule 44.1 includes no ripeness qualification.  It does not read: "A party . . . shall give . . . reasonable written notice once application of foreign law is ripe." To the contrary, it reads: "A party . . . shall give . . . reasonable written notice." Period.  The Advisory Committee notes recognize that, "[i]n some situations the pertinence of foreign law is apparent from the outset . . . and notice can be given conveniently in the pleadings.  In other situations the pertinence of foreign law may remain doubtful until the case is further developed." Thus, the point from which reasonableness is measured should be the time at which the pertinence of foreign law is discovered – not the time at which it becomes "ripe."

Whether Japanese law applied in this case is an issue that was capable of being raised from the very beginning of this litigation.  As Defendants note, *lex loci delicti* has been the choice of law doctrine in Alabama for more than 100 years.  *See Fitts v. Minn. Mining & Mfg. Co.*, 581 So. 2d 819, 820 (Ala. 1991).  Thus, it required no complicated legal research to discern the rule.  Likewise, no doubt ever existed that the injury at issue occurred on a U.S. military base located in Japan.  No further discovery or case development was required.  That an alternative defense – the government contractor defense – also existed and was being litigated did not relieve Defendants of the duty to raise the foreign law issue in a timely manner pursuant to Fed. R. Civ. P. 44.1.  *See Simmons*, 409 So. 2d at 759 (using the same analysis under Alabama Rule 44.1).  "There is nothing improper in raising more than one defense, even though the favorable resolution of one may moot resolution of another.  To hold otherwise would allow a defendant to withhold presenting potentially viable and timely defenses until the resolution of an alternate defense." *Id.*; *see also Rationis*, 426 F.3d at 585

(holding that simultaneously pleading alternative theories under <u>several</u> jurisdictions' laws is sufficient notice under Rule 44.1).

Finally, the court concludes that the application of Japanese law would have an important effect on the resolution of this case given the significant differences between Alabama law and Japanese law. This importance, however, is far outweighed by the <u>substantial</u> prejudice to the Plaintiff that would be caused by applying Japanese law at this late stage of the case. The parties have litigated this case for more than four years under the assumption that Alabama law applies. Defendants state that Plaintiff is not prejudiced by the timing of Defendants' motion for a determination of governing law. Specifically, Defendants point out that, under Japanese law, like Alabama law, Plaintiff must prove duty, causation, and damages. The similarities, however, end there. According to Defendants' description of Japanese law, Plaintiff's products liability claim is not cognizable. This claim, Defendants state, must be brought pursuant to general negligence principles of Japanese law, under which Plaintiff bears the added burden of proving that the product is <u>dangerous</u>. Likewise, Japan has no wrongful death statute. Like the products liability claim, that cause of action falls within liability for negligence. Defendants also state that "[s]everal of Plaintiff's claims are not sustainable under Japanese law," including Plaintiff's cause of action for wantonness and/or malice. Japanese law does not recognize punitive damages, and both compensatory and "consolation" damages are prescribed by formulas or reference guides.

Defendants' statements that no time or expense would have been saved or avoided, and that Plaintiff is not prejudiced by Defendants' late notice, are implausible. Given the differences between Alabama law and Japanese law, discovery may have taken a completely different route had the Plaintiff known from the outset that the court or a jury would evaluate her claims under Japanese law. For example, only punitive damages are recoverable for wrongful death in Alabama; thus the

-10-

Plaintiff focused on the Defendants' culpability rather than on Plaintiff's monetary losses to establish damages.

Every indication from complaint through discovery was that Alabama law would apply. Defendants raised Alabama defenses, but no others.  Even after committing in July 2006 to provide the court with a "quick brief" if some law other than Alabama law might apply, Defendants were silent for a year.  The court's expressly stated default position was that Alabama law would apply; thus, Plaintiff's continued prosecution of the case under Alabama law was reasonable.

The prejudice to Plaintiff is not tempered by any public policy concerns that sometimes arise in cases involving conflicting domestic and foreign law.  This case involves American citizens and companies, a product manufactured in the United States, and an injury occurring on a U.S. military base.  Japan has no interest in the outcome of this litigation, and no policy is furthered by application of Japanese law.

Because the possible application of Japanese law was apparent at the outset of this litigation, Defendants' failure to raise the issue for more than four years – after motions for summary judgment, hearings, and two rounds of discovery – constitutes a waiver of the application of Japanese law. Specifically, the court concludes, in its discretion, that Defendants' June 18, 2007 notice was not reasonable under Fed. R. Civ. P. 44.1.

### III.  CONCLUSION

For the reasons stated on the record at the hearing held October 23, 2007, and summarized above, the court concludes that Defendants did not provide reasonable written notice of their intent to raise an issue of Japanese law as required by Fed. R. Civ. P. 44.1.  Accordingly, the court will deny Defendants' motion, and this case will proceed under Alabama law.  The court will enter a separate order consistent with this memorandum opinion.

DATED this 26th day of October, 2007.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE